J. S37043/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF:  S.K., A MINOR :   IN THE SUPERIOR COURT OF
 :   PENNSYLVANIA
 :
APPEAL OF:  A.K., FATHER :   No. 501 EDA 2019

Appeal from the Order Dated January 7, 2019,
in the Court of Common Pleas of Philadelphia County
Domestic Relations Division at No. CP-51-DP-0002866-2017

IN THE INTEREST OF:  S.G.R.K., :   IN THE SUPERIOR COURT OF
A MINOR :   PENNSYLVANIA
 :
APPEAL OF:  A.K., FATHER :   No. 503 EDA 2019

Appeal from the Decree Entered January 7, 2019,
in the Court of Common Pleas of Philadelphia County
Domestic Relations Division at No. CP-51-AP-0000724-2018

BEFORE:  BOWES, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED AUGUST 12, 2019**

A.K. ("Father") appeals from the January 7, 2019 decree entered in the

Court of Common Pleas of Philadelphia County, Domestic Relations Division,

involuntarily terminating his parental rights to his dependent child, S.K., male

child, born in October of 2017 ("Child"), pursuant to the Adoption Act,

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b).[1]  After careful review, we affirm.

The trial court set forth the following:

> On October 24, 2017, the Child became known to the Department of Human Services ("DHS") when DHS received a General Protective Services ("GPS") report, which alleged that Child's mother ("Mother")[2] tested positive for marijuana and phencyclidine ("PCP") at Child's birth.  On October 27, 2017, DHS obtained an Order for Protective Custody ("OPC") for Child and placed Child with his maternal aunt where he currently remains.  On November 8, 2017, following a hearing, Child was adjudicated dependent.  On August 22, 2018, a DNA paternity test report was issued by the DNA Diagnostic Center per Court's Order, which indicated paternity as to Father.  Father was incarcerated when Child was born.  Father was not incarcerated at the time of the hearing.  Father has a long criminal history.  In February of 2001, Father was adjudicated delinquent on felony sexual assault charges.  O[n] March 5, 2008, Father was adjudicated delinquent on drug possession charges.  On March 5,

---

[1] The record reflects that Father filed a timely notice of appeal of the decree terminating his parental rights to Child at No. CP-51-AP-0000724-2018, which this court docketed at No. 503 EDA 2019.  Father also filed a timely notice of appeal of the order changing the goal to adoption at No. CP-51-DP-0002866-2017, which this court docketed at No. 501 EDA 2019.  By order entered February 25, 2019, this court consolidated the appeals *sua sponte* pursuant to Pa.R.A.P. 513.  (*Per curiam* order, 2/25/19.)  In his brief to this court, however, Father does not challenge the goal-change order.

We also note that the trial court appointed a guardian *ad litem* to represent Child's best interest.  On the date of the termination hearing, Child was 14 months old.  Therefore, separate legal representation was not required because Child was too young to express a preferred outcome and there could be no conflict between Child's best and legal interests.  *See In re D.L.B.*, 166 A.3d 322 (Pa.Super. 2017); *In re T.S.*, 192 A3d 1080 (Pa. 2018).

[2] The record reflects that the trial court also involuntarily terminated Mother's parental rights to Child by decree entered on January 7, 2019.

2008, Father was found guilty of Driving Under the Influence ("DUI"). On September 23, 2010, Father was convicted of felony drug charges and was sentenced to a maximum of 23 months' incarceration. On November 1, 2010, Father was found guilty of drug possession. On January 13, 2011, Father pled guilty to the felony drug charges and was sentenced to a maximum period of incarceration of 3 years. On March 25, 2015, Father pled guilty to a drug felony and was sentenced to a maximum of 23 months' incarceration. The underlying Petition to Terminate Father's Parental Rights was filed due to Child being in DHS custody for a period in excess of six months. Father had never lived with the Child nor provided the Child any financial support. He was unable to provide parental care for the Child nor remedy the causes that had brought the Child into DHS care. Father lacked stable housing and was in need of mental health treatment.

On January 7, 2019, following a hearing, the trial court ruled to terminate Father's parental rights pursuant to 23 Pa. C.S.A. § 2511 (a)(1)(2)(5) and (8) and found that termination of the Father's parental rights was in the best interest of the Child pursuant to 23 Pa.C.S.A. § 2511(b). Father filed the instant Notice of Appeal on February 5, 2019.

Trial court opinion, 4/5/19 at 2-4 (record citations omitted).

The record reflects that on February 6, 2019, while Father was still represented by court-appointed counsel Claire Leotta, Esq., Father filed separate *pro se* notices of appeal of the decree terminating his parental rights and of the goal-change order. After receiving confirmation from the trial court that Father was represented by counsel, this court entered an order on February 25, 2019, directing Attorney Leotta to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), as well

as completed docketing statements, on Father's behalf no later than March 7, 2019. Attorney Leotta timely complied.

Father raises the following issues for our review:

> 1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, A.K., pursuant to 23 Pa. C.S.A. [§] 2511(a)(1) where Father presented evidence that he made significant efforts to perform his parental duties[?]
>
> 2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, A.K., pursuant to 23 Pa. C.S.A. [§] 2511(a)(2) where Father presented evidence that he made significant efforts to remedy any incapacity or neglect[?]
>
> 3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, A.K., pursuant to 23 Pa. C.S.A. [§§] 2511(a)(5) and (a)(8) where the evidence clearly showed that [C]hild was removed from Mother's care at birth and [F]ather was not known at that time and was incarcerated[?]
>
> 4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, A.K., pursuant to 23 Pa. C.S.A. [§] 2511(b) where evidence was presented that Father has a positive parental bond with [C]hild that would be detrimental to sever[?]

Father's brief at 8.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the

> trial court if they are supported by the record." **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id.** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id.** The trial court's decision, however, should not be reversed merely because the record would support a different result. **Id.** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. **See In re R.J.T.**, 9 A.3d [1179, 1190 (Pa. 2010)].

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **In re M.G.**, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." **In re Adoption of T.B.B.**, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the

parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

In this case, the trial court terminated Father's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination decree pursuant to Subsections 2511(a)(2) and (b), which provide as follows:

> **(a)    General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

**(b)** **Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

Here, in terminating Father's parental rights, the trial court expounded that

> [t]he record demonstrated Father's ongoing inability to provide care for or control of Child due to his failure to remedy the conditions that brought the Child into care. These conditions included the inability of Father to provide stable housing and to address his own mental health needs. At the Termination Hearing, Mr. Khaleef Wilson, the Community Umbrella Agency ("CUA") representative, testified that the Single Case Plan ("SCP") Objectives for Father were established after he was released from prison and his paternity was established. The Father's SCP objectives were to participate in (1) housing counseling, (2) parenting classes, and (3) random drug testing and (4) to visit the Child. The CUA representative testified that Father had been unable to find appropriate housing or employment. Father also failed to communicate or demonstrate his source of income, if any. Father did not enroll in mental health treatment until October

- 8 -

2018. The CUA Representative testified that Father provided no financial assistance to the Child. During visitation, Father was unable to change Child's diaper.[3] The CUA Representative also testified that there existed concerns that Father would continue to spend time with the Child's Mother, who had been deemed a safety risk to the Child.

. . . .

At the hearing, Father testified that he had numerous felony convictions and admitted to hav[ing] been a drug dealer in his past. Father testified that he lived in a rooming house and that he rented a single room. Father testified that he lived in the rooming house with four other people who were strangers and unrelated to him. Father testified that he received public assistance and that he received money from family members living in Puerto Rico.

Father testified that his mental health interfered with his ability to work and that he had applied for disability payments. Father testified that he had bi-polar, depression and ADHD. Despite this mental health history, Father did not enroll in mental health treatment until October 2018. Father admitted that he was presently missing mental health treatment appointments.

Trial court opinion, 4/5/19 at 4-6.

In his brief to this court, Father contends that the trial court weighed his past criminal history too heavily and that "there was no evidence of any present incapacity." (Father's brief at 19-20.) The record belies Father's

---

[3] We note that the CUA representative testified that although Father "can use some help with [] parenting," the representative had "not noticeably seen [Father] actually change [C]hild" and, as a result, he "is not aware" if Father is able to change Child's diaper. (Notes of testimony, 1/7/19 at 38.) Therefore, the trial court's factual finding that Father is "unable to change Child's diaper" is not supported by the record, and we reject the finding.

claim. Notwithstanding the fact that Father's criminal history is relevant to the termination decision, the record supports the trial court's factual findings that Father lacks appropriate housing; that Father does not work; that Father does not provide any financial assistance to Child; and that Father has not been consistent in attending his mental-health treatment.

We have reviewed the record carefully and conclude that DHS presented clear and convincing evidence that Father's conduct satisfies the statutory grounds for terminating Father's parental rights under Section 2511(a)(2). The record demonstrates that the repeated and continued incapacity of Father has caused Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of Father's incapacity cannot or will not be remedied by Father. We discern no abuse of discretion.

We now turn to whether termination was proper under Section 2511(b). As to that section, our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*,

> 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219, quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in

- 11 -

a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

The record reflects that Child, who was 14 months old at the time of the termination hearing, has never lived with Father. Child lives with his foster parents who want to adopt him. (Notes of testimony, 1/7/19 at 57-58.) Child calls his foster mother "mom-mom." (*Id.* at 60.) The caseworker testified that when Child wants something, he looks to his foster mother to fulfill his needs. (*Id.* at 47.) Additionally, the caseworker opined that Child has no bond with Father and that termination would not result in irreparable harm to Child. (*Id.* at 44-45.)

In terminating Father's parental rights under Section 2511(b), the trial court commended Father for being candid about his criminal history and his potential for re-incarceration, but stressed that Father's "criminal history is of grave concern" "with regard to the safety of [C]hild." (*Id.* at 85.) The trial court further emphasized that all parental duties are being performed by Child's foster parents and that it is in Child's best interest to remain with the foster family. (*Id.* at 85-86.) The trial court also found that termination would

have no detrimental effect on Child.  Consequently, the trial court terminated Father's parental rights under Section 2511(b) because termination was in the Child's best interest.  (Trial court opinion, 4/5/19 at 7-8.)

Based upon our thorough review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under Sections 2511(a)(2) and (b).

Order affirmed.  Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/19